IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Travis R. Brown, ) | C/A No. 0:13-2018-DCN-PJG |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden McCall, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

The petitioner, Travis R. Brown ("Brown"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 10.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 12.) Brown filed a response in opposition. (ECF No. 27.) Having carefully considered the parties' submissions and the record in this case, the court finds that the respondent's motion should be granted and Brown's Petition denied.

**BACKGROUND**

Brown was indicted in March 2003 in Greenwood County for murder and assault and battery with intent to kill (03-GS-34-514, -515). (App. at 454-57, ECF No. 11-3 at 204-07.) Brown was subsequently indicted in May 2003 for grand larceny (03-GS-34-678), and again in December 2004 for criminal conspiracy (04-GS-34-1290). (ECF No. 11-5.) Brown was represented by Wade Crow, Esquire, and Delton Powers, Esquire, and on December 13-15, 2004 was tried by a jury and found

guilty as charged. (App. at 439, ECF No. 11-3 at 189.) The circuit court sentenced Brown to twenty years' imprisonment for assault and battery with intent to kill, ten years' imprisonment for grand larceny, five years' imprisonment for criminal conspiracy, and thirty consecutive years' imprisonment for murder. (App. at 451-52, ECF No. 11-3 at 201-02.)

Brown timely appealed and was represented by Robert M. Dudek, Esquire, who filed an Anders[1] brief on Brown's behalf that raised the following issue:

> Whether the court erred by refusing to allow the introduction of a letter co-defendant Casey Gregg sent to appellant since Gregg admitted writing the letter, appellant was also familiar with Gregg's handwriting and he also identified the letter, since this letter was a statement against interest by Gregg, and appellant had the right to corroborate his testimony about Gregg threatening him, and to present a complete defense?

(ECF No. 11-7.) Brown filed a *pro se* response to the Anders brief that generally argued that he was denied his constitutional right to present a defense. (ECF No. 11-9.) On May 11, 2007, the South Carolina Court of Appeals dismissed Brown's appeal. (State v. Brown, Op. No 2007-UP-218 (S.C. Ct. App. May 11, 2007), ECF No. 11-10.) Brown filed a *pro se* petition for rehearing on June 22, 2007 (ECF No. 11-11), which the South Carolina Court of Appeals denied by order dated August 27, 2007 (ECF No. 11-12.) The remittitur was issued on October 3, 2007. (ECF No. 11-13.)

Brown filed a *pro se* application for post-conviction relief on May 19, 2008 ("2008 PCR") in which he raised the following claims:

---

[1] Anders v. California, 386 U.S. 738 (1967). Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. Anders, 386 U.S. at 744.



    (a)    Ineffective Assistance of Trial Counsel;
Trial counsel fail[ed] to object to improper comments;

    (b)    Applicant was denied his Sixth, Fifth, Fourteenth Amendment;
Tr[ia]l counsel fail[ed] to call alibi witnesses;

    (c)    Prosecution Misconduct in Derailing Witnesses;
The prosecution was leading the witnesses.

(Brown v. State of South Carolina, 08-CP-34-185, App. at 458-63, ECF No. 11-3 at 208-13.) On January 11, 2010, the PCR court held an evidentiary hearing at which Brown appeared and testified and was represented by Marlon E. Padgett, IV, Esquire. (App. at 465-82, ECF No. 11-3 at 215-32.) By order filed February 9, 2010, the PCR court denied and dismissed Brown's PCR application with prejudice. (App. at 483-89, ECF No. 11-3 at 233-39.)

Brown filed a second *pro se* application for post-conviction relief on June 14, 2010 ("2010 PCR") that raised the following issues:

    (a)    Ineffective Assistance of Post Conviction Relief (PCR) Attorney;
PCR counsel fail[ed] to file notice of appeal as agreed;

    (b)    Applicant did not knowingly or intelligently wai[v]e his right to appeal;
Applicant submits that he is entitled to a full bite of the apple pursuant to Austin Doctrine.

(Brown v. State of South Carolina, 10-CP-34-157, App. at 491-97, ECF No. 11-3 at 241-47.) On June 6, 2011, the PCR court held an evidentiary hearing at which time the State consented to Brown's request to seek belated review. (App. at 505-16, ECF No. 11-4 at 7-18.) By order dated July 12, 2011, the PCR court dismissed Brown's 2010 PCR application with prejudice and gave

Brown leave to file a belated petition to seek appellate review of his 2008 PCR application pursuant to Austin v. State.² (App. at 517-21, ECF No. 11-4 at 19-23.)

Brown, represented by Appellate Defender Robert M. Pachak, Esquire, of the South Carolina Commission on Indigent Defense, filed a petition for a writ of certiorari that raised the following issue:

> Whether there was any evidence to support the PCR judge's findings that petitioner was entitled to a belated appeal of the denial of his first PCR applicaition?

(ECF No. 11-14.) Additionally, counsel for Brown filed a petition for a writ of certiorari pursuant to Austin v. State that raised the following issue:

> Whether defense counsel was ineffective in failing to introduce a letter written by the co-defendant and addressed to petitioner which was exculpatory of petitioner?

(ECF No. 11-15.) On July 1, 2013, the South Carolina Court of Appeals issued an order in which it granted the petition for a writ of certiorari pursuant to Austin v. State and, after Austin review, denied Brown's petition for a writ of certiorari from the final order in the 2008 PCR action. (ECF No. 11-19.) The remittitur was issued July 22, 2013. (ECF No. 11-20.) Brown filed the instant Petition for a writ of habeas corpus on July 19, 2013.³ (ECF No. 1.)

---

² Austin v. State, 409 S.E.2d 395 (S.C. 1991). "Under Austin, a defendant can appeal a denial of a PCR application after the statute of limitations has expired if the defendant either requested and was denied an opportunity to seek appellate review, or did not knowingly and intelligently waive the right to appeal." Odom v. State, 523 S.E.2d 753 (S.C. 1999); see also King v. State, 417 S.E.2d 868 (S.C. 1992) (explaining the appellate procedure in an Austin matter).

³ See Houston v. Lack, 487 U.S. 266 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court).



**FEDERAL HABEAS ISSUES**

Brown raises the following grounds in his federal Petition for a writ of habeas corpus:

**Ground One:**  The court had error by not squashing or dismissing my murder indictment.
**Supporting facts:**  The murder indictment should have been dismiss due to subject matter of jurisdiction base on that my indictment used the language of a shotgun verus a handgun.  The autopsy reports proved that the deceased was shot with a pistol.  I had admitted to have a shotgun and my co-defendant had the shotgun.

**Ground Two:**  The courts had error for not letting my co-defendant letter in to evidence.
**Supporting facts:**  They error due to the fact that my co-defendant admit writing that letter.  The jury even ask to review the letter but it was not admitted into evidence but that letter proved my innocense on that murder charge and was force to shoot the other victim.

(See ECF No. 1) (errors in original).

**DISCUSSION**

**A.**     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.



See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in

its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 131 S. Ct. at 786-87). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 131 S. Ct. at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no

reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.     Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be



procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.    Summary Judgment Motion**

    **1.    Statute of Limitations**

The respondent first argues that Brown's Petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1). The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); see Gonzalez v. Thaler, 132 S. Ct. 641 (2012). Because Brown filed a direct appeal, his conviction became final on September 26, 2007—the expiration of the time in which Brown could have timely filed a petition for a writ of certiorari following the

issuance of the South Carolina Court of Appeals's order on Brown's petition for rehearing.[4]  See Rule 242(c) SCACR (instructing that a petition for a writ of certiorari shall be filed "within thirty (30) days after the petition for rehearing or reinstatement is finally decided by the Court of Appeals"); Gonzalez, 132 S. Ct. 653-54 ("[B]ecause [petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.").  Accordingly, the limitations period began to run on September 27, 2007 and expired September 26, 2008, unless the period was at any time tolled for any properly filed state PCR application.  28 U.S.C. § 2244(d)(2); see also Hernandez v. Caldwell, 225 F.3d 435, 438-39 (4th Cir. 2000) (applying the anniversary date method in calculating the one-year limitation period in § 2244 and concluding that "the actual count on the limitations period began on April 25, 1996, and ended on April 24, 1997, excluding any time tolled"); United States v. Hurst, 322 F.3d 1256, 1260-61 (10th Cir. 2003) (holding that the one-year limitation period in AEDPA should be calculated using the anniversary date method even when the intervening period includes a leap year).

Brown filed his first state PCR application on May 19, 2008.  At that point, 235 days of non-tolled time had accrued since the period of limitations began to run.  The period of limitations was

---

[4] Because Brown did not seek certiorari from the South Carolina Supreme Court, he is not entitled to an additional tolled time period of 90 days in which to seek certiorari review from the United States Supreme Court.  Hammond v. Hagan, C/A No. 4:07-1081-JFA, 2008 WL 2922860, *3 (D.S.C. July 24, 2008); see also 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."); U.S. Sup. Ct. R. 10(b) (stating that certiorari is considered where "state court of last resort" has decided an important federal question); U.S. Sup. Ct. R. 13 (stating that the time period for a petition for a writ of certiorari is 90 days from the decision or judgment of a state court of last resort).  The court observes that on February 19, 2009 the South Carolina Supreme Court stated that it "will no longer entertain petitions for writs of certiorari where the Court of Appeals has dismissed an appeal after conducting an Anders review." State v. Lyles, 673 S.E.2d 811, 813 (S.C. 2009).  However, Lyles had not been issued at the time of Brown's direct appeal.



tolled during the pendency of the 2008 PCR action. The PCR court filed its order dismissing Brown's petition on February 9, 2010. As no appeal was filed from this order, this decision became final on March 11, 2010—thirty days after the entry of the order—pursuant to Rule 203(b)(1), SCACR. See, e.g., Allen v. Mitchell, 276 F.3d 183, 185 (4th Cir. 2001) (indicating that the statute of limitations is tolled pursuant to § 2244(d)(2) during the "Appeal Period," which is defined as "the interval between the lower court decision and the deadline for seeking review") (citing Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999)). At this time, Brown had 120 days of statutory time remaining.

Brown filed a second PCR application on June 14, 2010. At that point, 330 days of non-tolled time had accrued since the period of limitations began to run, leaving Brown with 35 days of statutory time remaining.[5] In his 2010 PCR action, Brown was granted a belated appeal pursuant to Austin from his 2008 PCR application, thereby tolling the statute of limitations during the pendency of this appeal. Regardless of whether Brown's statute of limitations began to run from the filing of the South Carolina Court of Appeals' Order (July 1, 2013) or the issuance of the remittitur (July 22, 2013), Brown's federal Petition (with a prison mail room stamp date of July 19, 2013) was

---

[5] Brown was granted a belated appeal pursuant to Austin from his 2008 PCR application. However, the fact that Brown was granted a belated PCR appeal does not entitle him to toll the time between the PCR actions. See McHoney v. State of South Carolina, 518 F. Supp. 2d 700, 705 (D.S.C. 2007) (finding that no collateral action was "pending," as defined by the AEDPA, during the time between the state court's initial denial of the PCR application and the state court's allowance of a belated appeal of that PCR application and thus the AEDPA's limitations period was not tolled during this time); Hepburn v. Eagleton, C/A No. 6:11-cv-2016-RMG, 2012 WL 4051126, at *3 (D.S.C. Sept. 13, 2012) (same); see also Evans v. Chavis, 546 U.S. 189, 192 (2006) ("[T]he time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law.") (emphasis in original); Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court.").



filed prior to the expiration of the one-year limitations period under § 2244(d)(1)(A).  Accordingly, the court will address the merit's of Brown Petition.

### 2. Merits

The respondent alternatively argues that federal habeas relief should not be granted as neither of Brown's grounds for relief is cognizable in this action because they rest on state law.  In Ground One, Brown argues that the trial court erred in denying his motion to quash his murder indictment, alleging that because the indictment indicated that the decedent was shot with a shotgun and the autopsy reports demonstrate that the decedent was shot with a pistol, the trial court lacked subject matter jurisdiction.  Whether the state court lacked subject matter jurisdiction is a question of state law, which is not cognizable in this federal habeas action.  See Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) (concluding that because a petitioner's allegations that circuit court lacked jurisdiction over certain counts of an indictment rested solely upon the interpretation of state laws, it was not cognizable on federal habeas review absent a showing of a "complete miscarriage of justice"); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."); 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").  Although Brown generally argues that his right to due process was denied, he has failed to show a "complete miscarriage of justice," which is defined as actual innocence.  See Wright, 151 F.3d at 158 (noting that the miscarriage of justice exception is available to one who is actually innocent of the underlying crime).



In Ground Two, Brown argues that the trial court erred in sustaining the prosecutor's objection to the admission of a letter written by Brown's co-defendant, Casey Gregg. Brown alleges that this letter proves that he is innocent of the murder charge. The record reveals that trial counsel questioned Gregg about his letter during trial counsel's cross-examination of Gregg. Specifically, after identifying the document as a letter to Brown, Gregg admitted that he wrote it and sent it to Brown. Trial counsel asked Gregg about an excerpt from the letter that stated, "Yep, you kept it real by telling me that you were going to turn State on me" and indicating that there was nothing "[g]angster about turning State or being a snitch. If somebody would have done what they was supposed to do that night, we would not be here in this shit." (App. at 284, ECF No. 11-3 at 34.) Gregg testified that he meant that "if we just rob, we wouldn't be in all in this mess right here now. Nobody would have ended up having to get killed or Bernard wouldn't be shot right now if we just went in there and robbed them." (App. at 284-85, ECF No. 11-3 at 34-35.) Gregg denied that it meant that Brown failed to kill Randall Bernard McNeil, the surviving victim. Trial counsel did not offer the letter into evidence at that time. During direct examination of Brown, trial counsel presented the letter to Brown asking him to identify the letter and confirm that it was sent to him by Gregg. Trial counsel then moved to introduce the letter into evidence. After a recess, the solicitor objected to the introduction of letter, arguing that the letter should have been introduced as a exhibit during Gregg's testimony. Trial court sustained the objection, finding that introduction of the letter or having Brown read from the letter would be hearsay and explaining that it would be "his attempting to introduce the testimony of a witness who was on the stand yesterday. It would be proper to cross examin[e] [Gregg] as to the letter he wrote. It would be a violation of the hearsay

rule to allow this witness to read into the record a letter which he says directs him to do certain activities." (App. at 357, ECF No. 11-3 at 107.)

In his direct appeal, which was dismissed following Anders review, Brown stated that his defense was that "Gregg unexpectedly shot and killed the decedent, and that Gregg shot and wounded Randall [Bernard] McNeil during the robbery attempt." (ECF No. at 11-7 at 6.) Brown further indicated that he told the police and the jury that "Gregg forced him at gunpoint to also shoot McNeil, after Gregg had wounded him." (Id.) Brown argued that the trial judge erred in refusing to allow the introduction of the letter into evidence. Specifically, relying on the South Carolina Rules of Evidence, Brown argued that the letter was admissible as it had been unquestionably authenticated, it was a statement against Gregg's penal interest, and it was exculpatory as it corroborated Brown's testimony that Gregg threatened him and was the mastermind of the plan. Brown also argued that there was no doubt Gregg wrote the letter, it was unquestionably reliable, and that he had a constitutional "right to present a complete defense and corroborate his own testimony."[6] (Id. at 10.) In Brown's *pro se* Anders brief, he argued that in light of Holmes v. South Carolina, 547 U.S. 319 (2006),[7] his convictions should be overturned.

As indicated above, "[i]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

---

[6] Arguably this constitutional issue was not preserved for appellate review as it was not presented to the trial court.

[7] In Holmes, the United States Supreme Court concluded that "an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict" violated a criminal defendant's federal constitutional right to have "a meaningful opportunity to present a complete defense," which is easily distinguishable from the issue in this matter. Holmes, 547 U.S. at 321, 331.

Page 14 of 16



Furthermore, "in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' " Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008) (quoting Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000)). Upon review of all of the filings in this matter and the record before the court, the court finds that Brown cannot demonstrate that the state trial court and appellate court misapplied federal law, or that the alleged evidentiary error, if there even was one, was so extreme as to deny Brown a constitutionally fair proceeding. Therefore, Brown is not entitled to habeas relief on either of these grounds.

## RECOMMENDATION

Based upon the foregoing, the court recommends that the respondent's motion for summary judgment (ECF No. 10) be granted and Brown's Petition denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 13, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).